**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TSIVA, INC., et al.,

                Plaintiffs,

v.                                       Case No. 3:12-cv-631-J-34PDB

ATTORNEY GENERAL, DEPARTMENT
OF JUSTICE, et al.,

                Defendants.

_____/

## ORDER

This action arises out of the United States Citizenship & Immigration Services' ("USCIS") denial of a Form I-140 petition for an employment-based immigrant visa, and the Administrative Appeals Office's ("AAO")[1] subsequent denials of an appeal and two motions to reopen and reconsider.  It is before the Court on cross motions for summary judgment.

## I.  Background

Plaintiff, the proposed beneficiary of an employment-based immigrant visa, Sivanipaditham Thaimanisamy ("Thaimanisamy"), is a native of India and a citizen of Malaysia. See Certified Administrative Record at 263 (Doc. 17; CAR).[2] Thaimanisamy owns

_____

[1] The Court will reference the USCIS and AAO collectively as "the agency."

[2] Document Number 17 is the Certification of Documents submitted by the USCIS, and the Certified Administrative Record is docketed as attachments 1-7 to Document Number 17.

51% of Plaintiff Khesmir, Inc. ("Khesmir"),[3] a Malaysian corporation which operates the long-standing Khesmir Restaurant, as well as a large corporate cafeteria, both located in Penang, Malaysia.  Id. at 20, 22, 54, 59, 61.  In 2004, Thaimanisamy came to the United States and formed a partnership with Plaintiff Nagarajan Sivanipaditham ("Sivanipaditham"),[4] with whom he incorporated, Plaintiff Tsiva, Inc.  ("Tsiva").  Id. at 54.  Tsiva purports to operate Big Pete's Pizzeria, a restaurant located in Jacksonville, Florida.  Id. at 267.

On October 25, 2006, Tsiva filed a Form I-140 petition on Thaimanisamy's behalf for an employment-based immigrant visa,[5] seeking to have Thaimanisamy, in his capacity as President of Tsiva, classified as a "multinational business executive or manager" pursuant to 8 U.S.C. § 1153(b)(1)(C) (also known as § 203(b)(1)(C) of the Immigration and Nationality Act ("INA")).  Id. at 263.[6]  On July 31, 2007, a representative located at the Nebraska Service Center of the USCIS[7] sent a request for additional evidence to support the visa petition ("Request for Evidence" or "RFE"), id. at 260-62, to which Tsiva responded, id. at 242-59.  By decision dated December 26, 2007, the Regional Director of the Nebraska Service Center

---

[3] Throughout the record, Khesmir is sometimes spelled "Keshmir."

[4] Throughout the record, Sivanipaditham is sometimes spelled "Sivanadipatham."

[5] The Immigration and Nationality Act divides aliens into two classes: immigrant aliens and nonimmigrant aliens. See Elkins v. Moreno, 435 U.S. 647, 664 (1978). Generally, immigrant aliens are aliens who seek permanent residence in the United States, and nonimmigrant aliens are those who wish to be in the United States on a temporary basis.  Id. at 664-65; 8 U.S.C. §§ 1101(a)(15), 1184(a).
There are three types of immigrant visas: (1) family-based immigrant visas; (2) employment-based visas; and (3) diversity immigrant visas.  8 U.S.C. §§ 1151(a)(1), (2), (3).

[6] The Beneficiary's name is spelled "Thaimanasamy" on the Form I-140.

[7] The USCIS is the successor to the Immigration and Naturalization Service ("INS"). " In 2003, services provided by the Bureau of Citizenship and Immigration Services at the INS were transitioned to the USCIS at the newly-created Department of Homeland Security ("DHS")."  See Brazil Quality Stones, Inc. v. Chertoff, 531 F.3d 1063, 1066 & n.2 (9th Cir. 2008).

2

of the USCIS denied Tsiva's Form I-140 petition after finding that Tsiva failed to establish that Thaimanisamy had been or would be employed in a managerial or executive capacity. Id. at 234-38.  On or about January 25, 2008, Tsiva submitted Notice of a Form I-290B appeal, id. 224-33, and on February 27, 2008, Tsiva submitted a legal brief and additional evidence in support of that appeal, id. 207-23.  On December 19, 2008, the AAO denied Tsiva's appeal, and affirmed the USCIS's December 26, 2007 decision for the additional reason that Tsiva had failed to establish a qualifying relationship between itself and Khesmir. Id. at 197-206.  On or about January 15, 2009, Tsiva submitted a Form I-290B motion to reopen and reconsider, bearing a signature stamp.  Id. at 34-35, 196.  The AAO rejected Tsiva's January 15, 2009 motion to reopen and reconsider because the Form I-290B did not include an original handwritten signature.  Id. at 196.  Tsiva resubmitted the Form I-290B motion to reopen and reconsider on or about January 30, 2009, this time with an original handwritten signature, and additional documentation in support of the request ("first motion to reopen and reconsider").  Id. 34-195.  The AAO dismissed the first motion to reopen and reconsider on May 6, 2010.  Id. at 30-33.  Undeterred, on or about June 4, 2010, Tsiva submitted a second Form I-290B motion to reopen and reconsider the AAO's December 19, 2008 decision ("second motion to reopen or reconsider").  Id. 5-29.  On April 27, 2012, the AAO dismissed the second motion to reopen or reconsider.  Id. at 1-4.

On May 29, 2012, Plaintiffs Tsiva, Khesmir, Thaimanisamy, and Sivanipaditham (collectively "Tsiva"), filed a Complaint for Judicial Review of Agency Denial of Tsiva, Inc.'s I-140 Petition for Alien Worker as a Multinational Executive or Manager Pursuant to Section 201(b)(1)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(1)(C) under the

Administrative Procedures Act 5 USC § 702 and 28 USC § 1331 (Doc. 1; Complaint), against "Respondents," Eric Holder, Attorney General, Department of Justice, and other federal officials, (collectively "Defendants").[8]  In this action, Tsiva seeks injunctive and declaratory relief pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701 et. seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  See generally Complaint.  Tsiva asks the Court to "[c]onduct such hearings and examinations of Plaintiffs as necessary to adjudicate the Form I-140 Petition for Alien Worker," and to declare as unlawful, arbitrary and capricious, an abuse of discretion, and not in accordance with the law, the USCIS's denial of Tsiva's Form I-140 petition and the AAO's denial of Tsiva's subsequent appeal and motions to reopen and reconsider.  Id. at 18-19.  Tsiva also seeks an award of attorneys' fees and costs.  Id. at 19.

On May 15, 2013, Tsiva filed Plaintiffs' Motion for Summary Judgment and Memorandum in Support of Motion (Doc. 9; Tsiva's Motion). That same day, Defendants filed Defendants' Cross Motion for Summary Judgment (Doc. 10; Defendants' Motion).[9]  On June 5, 2013, Tsiva filed Plaintiffs' Response to Defendant's [sic] Cross Motion for Summary Judgment (Doc. 11; Tsiva's Response), and Defendants filed Defendants' Opposition to Plaintiffs' Motion for Summary Judgment (Doc. 12; Defendants' Response).  Then, on June

---

[8] In addition to the Attorney General of the United States, Tsiva named as Respondents Janet Napolitano, Secretary of Homeland Security; Ivan K. Fong, General Counsel, Department of Homeland Security; Alejandro Mayorkas, Director of Citizenship and Immigration Services, Department of Homeland Security; and Perry Rhew, Chief of the Administrative Appeals Office.  Tsiva sued each of the Defendants in their official capacity only.  As such, pursuant to Rule 25(d), Federal Rules of Civil Procedure (Rules(s)), those public officers who no longer hold the public offices as named in the Complaint are automatically substituted as parties by the named successor in office.

[9] The Court will cite to the pagination automatically applied to Tsiva's Motion and Defendants' Motion by the Court's CM/ECF system, rather than the pagination included in the text of the parties' motions.

14, 2013, Plaintiffs filed Plaintiffs' Reply Brief for Summary Judgment (Doc. 14; Tsiva's Reply), and Defendants filed Defendants' Reply in Support of Defendants' Cross Motion for Summary Judgment (Doc. 13; Defendants' Reply).  Accordingly, the matter is ripe for review.

## II.   Jurisdiction

On February 14, 2014, the Court entered an Order (Doc. 16; Order) in which it sua sponte raised the question of whether the Court has subject matter jurisdiction over this action in light of 8 U.S.C. § 1252(a)(2)(B)(ii), which provides:

> (2) Matters not subject to judicial review
>
> . . .
>
> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory) . . .  and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–
>
> . . .
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter[10] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).  At the Court's direction, see Order at 5, the parties each submitted a supplemental memorandum in which each took the position that the Court has subject matter jurisdiction over Tsiva's claims. See Defendants' Supplemental Memorandum

---

[10] The phrase "under this subchapter" refers to Title 8, Chapter 12, Subchapter II, which encompasses 8 U.S.C. §§ 1151 through 1381.  Karpeeva v. U.S. Dep't of Homeland Sec. Citizenship and Immigration Servs., 432 F. App'x 919, 924 (11th Cir. 2011) (citing Kucana v. Holder, 558 U.S. 233, 239 n.3 (2010)).

Addressing Subject Matter Jurisdiction (Doc. 18); Plaintiff's Memorandum as to Court's Subject Matter Jurisdiction (Doc. 19).

Upon review of the parties' supplemental memoranda and the relevant legal authority, the Court is satisfied of the existence of subject matter jurisdiction over this action. "The INA's judicial review statute eliminates review by any court of discretionary decisions or actions of the Attorney General or Secretary." Mejia Rodriguez v. U.S. Dep't of Homeland Sec., 562 F.3d 1137, 1142 (11th Cir. 2009) (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) (footnote omitted). However, notwithstanding this general limitation, a court maintains jurisdiction over purely legal questions of statutory eligibility. See Williams v. Sec'y, U.S. Dep't of Homeland Sec., 741 F.3d 1228, 1231 (11th Cir. 2014) (citing Mejia Rodriguez, 562 F.3d at 1142-45). Tsiva petitioned the USCIS for an employment-based visa under 8 U.S.C. § 1153, a provision under which "certain employment-based immigrants are given first priority for visa preferences." Sunshine Co. Food Distrib., Inc. v. U.S. Citizenship & Immigration Servs., 362 F. App'x 1, 3 (11th Cir. 2010) (citing 8 U.S.C. § 1153(b)(1)). "The USCIS enjoys broad discretion in deciding whether to grant or deny visa petitions based on preference classifications." Khamisani v. Holder, No. H-10-0728, 2011 WL 1232906, at *3 (S.D. Tex. March 31, 2011). However, just because the USCIS maintains the "ultimate discretionary authority" to grant or deny visa petitions does not mean that every USCIS decision on a petition for a preference-based visa is discretionary, and thus not subject to review. See Mejia Rodriguez, 562 F.3d at 1143 ("[S]imply because the Secretary [of the Department of Homeland Security] has the ultimate discretionary authority to grant an immigration benefit does not mean that every determination made by USCIS regarding an alien's application for

6

that benefit is discretionary, and hence not subject to review.").  Indeed, the INA's judicial review statute "requires [courts] to look at the <u>particular</u> decision being made and to ascertain whether <u>that</u> decision is one that Congress has designated to be discretionary." <u>Id.</u> (emphasis in original).

The Eleventh Circuit's decision in <u>Mejia Rodriguez</u> is instructive.  In <u>Mejia Rodriguez</u>, the court, quoting the Third Circuit's decision in <u>Alaka v. Att'y Gen. of the U.S.</u>, 456 F.3d 88 (3d Cir. 2006), explains that "the Attorney General's general authority to arrive at an outcome through the application of law to facts is distinct from the issue of whether Congress has 'specified' that the decision lies in the Attorney General's discretion and is thus unreviewable."  <u>Alaka</u>, 456 F.3d at 95-96 (footnote omitted).  As such, the jurisdiction stripping provision of § 1252(a)(2)(B)(ii) comes into effect when such discretion is specified by the language of the statute in question.  <u>See id.</u> at 96.  The Eleventh Circuit then considered the jurisdiction-stripping implications of § 1252(a)(2)(B)(ii) in the context of an alien's request for Temporary Protective Status ("TPS"), and concluded that the USCIS determination in that instance fell outside the limitations on judicial review under the INA. <u>Mejia Rodriguez</u>, 562 F.3d at 1143-45.  The court explained that in that context,

> the director of USCIS is required to make many decisions based on his legal interpretation of an alien's statutory eligibility for this immigration benefit before exercising his ultimate discretionary authority to grant or deny the application. <u>See</u> 8 U.S.C. § 1254a(c) (outlining the eligibility standards for individual applicants for TPS).  Those several preliminary <u>statutory</u> eligibility decisions are not ones that involve discretion. Instead, staff at USCIS must simply apply the facts of the applicant's situation to the relevant law when deciding whether the applicant has satisfied these statutory eligibility requirements.

<u>Id.</u> at 1143 (emphasis in original).

Similarly, in the instant case, in adjudicating a petition for an alien worker as a multinational executive or manager, the USCIS must first make an assessment of the alien's statutory eligibility under 8 U.S.C. § 1153(b)(1)(C) before exercising its discretionary authority to grant or deny the petition.  In denying Tsiva's petition, appeal, and subsequent motions to reopen and reconsider, the agency based its decisions on Tsiva's failure to satisfy certain statutory eligibility requirements under the INA and its implementing regulations. Indeed, the USCIS decision was well summarized by AAO as follows:

> The petitioner is a Florida corporation that owns and operates a restaurant. The petitioner seeks to employ the beneficiary as its president.  Accordingly, the petitioner endeavors to classify the beneficiary as an employment-based immigrant pursuant to section 203(b)(1)(C) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1153(b)(1)(C), as a multinational executive or manager.  The director denied the petition based on two independent grounds of ineligibility.  The director concluded that: 1) the petitioner failed to establish that the beneficiary was employed abroad in a qualifying managerial or executive capacity; and 2) the petitioner failed to establish that it would employ the beneficiary in a managerial or executive capacity.

CAR at 198.  Further, in denying Tsiva's appeal, the AAO concluded that Tsiva had failed to meet its burden for the additional reason that the evidence did not demonstrate a qualifying relationship between Khesmir and Tsiva as required by 8 C.F.R. § 204.5(j)(3)(i)(C).[11]  Id. at 204.  Thus, the decisions of which Tsiva seeks review rest on the agency's purely legal, non-discretionary determinations that Tsiva failed to meet its initial burden to prove statutory eligibility.  Accordingly, § 1252(a)(2)(B)(ii) does not preclude the Court from reviewing Tsiva's challenge to the denial of its visa petition because such non-

---

[11] Under 8 C.F.R. § 204.5(j)(3)(i)(C), a petition for a multinational executive or manager must include a statement demonstrating that "[t]he prospective employer in the United States is the same employer or a subsidiary or affiliate of the firm or corporation or other legal entity by which the alien was employed overseas[.]"

discretionary, statutory eligibility decisions fall outside the limitations on judicial review under the INA.  See Mejia Rodriguez, 562 F.3d at 1144-45; Williams, 741 F.3d at 1231.

## III.    Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).[12]  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).  "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment." T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).  As the action is before the Court on such cross-motions, "the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." Id.

When the USCIS grants or denies a visa preference classification, this decision is subject to judicial review under the APA, see 5 U.S.C. § 702, "but the standard [of review] is a highly deferential one which presumes that the agency's action is valid." Khamisani,

---

[12] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amendments.

The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

2011 WL 1232906, at *3.  Indeed, "'even in the context of summary judgment, an agency action is entitled to great deference.'"  Sunshine Co. Food Distrib., Inc., 362 F. App'x at 2 (quoting Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 87 F.3d 1242, 1246 (11th Cir. 1996)).

"Under the Administrative Procedures Act, a court shall set aside an action of an administrative agency only where it is arbitrary, capricious, or an abuse of discretion."  Preserve Endangered Areas, 87 F.3d at 1246 (citing 5 U.S.C. § 706(2)(A)).  In making this determination, a court "must consider whether an agency's decision 'was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"  Sunshine Co. Food Distrib., Inc., 362 F. App'x at 2-3 (quoting Sierra Club v. Johnson, 436 F.3d 1269, 1274-74 (11th Cir. 2006)).  Further, the scope of review of the agency's action is generally limited to the administrative record.  See Preserve Endangered Areas, 87 F.3d at 1246 ("[W]hile certain circumstances may justify going beyond the administrative record, a court conducting a judicial review is not 'generally empowered' to do so.").  Thus, "[t]he role of the court is not to conduct its own investigation and substitute its own judgment for the administrative agency's decision."  Preserve Endangered Areas, 87 F.3d at 1246; see also Smith v. Holder, 487 F. App'x 731, 733 (3d Cir. 2012) ("[T]he court should not re-weigh the evidence presented but must determine only if 'a reasonable mind might accept [the evidence] as adequate to support a conclusion.'").  Instead, the court is limited to deciding whether "'on the basis of the record the agency provides, . . . the action passes muster under the appropriate APA standard of review.'"  Preserve Endangered Areas, 87 F.3d at 1246 (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985)); see also Khamisani,

2011 WL 1232906, at *3 ("Thus, this narrow scope of review forbids a reviewing court from substituting its judgment for that of the agency, and mandates affirmance if a rational basis exists for the agency decision, even if the court might otherwise disagree.").

## IV.   Discussion

Each year, the USCIS grants a limited number of preference visas to "certain multinational executives and managers" who serve "in a capacity that is managerial or executive."  8 U.S.C. § 1153(b)(1)(C); see Khamisani, 2011 WL 1232906, at *3; see also IKEA U.S., Inc. v. U.S. Dep't of Justice, INS, 48 F. Supp. 2d 22, 24 (D.D.C. 1999).  A United States employer seeking to permanently employ an alien in this visa category must file a Form I-140 petition for classification of an alien as a multinational executive or manager under 8 U.S.C. § 1153(b)(1)(C).  See 8 C.F.R. § 204.5(j)(1).  Under the statute, "[p]reference is given to an alien who, in the three years preceding the alien's application for classification and admission into the United States, has been employed for at least one year by a corporation and seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary in a 'capacity that is managerial or executive.'" Sunshine Co. Food Distrib., Inc., 362 F. App'x at 3; see also Khamisani, 2011 WL 1232906, at *3 ("If qualified, multinational executives and managers are among those workers given 'first priority' for visas in the employment context[.]").   Eligibility for visas within this classification is governed by the INA and its attendant implementing regulations.  See Khamisani, 2011 WL 1232906, at *4.

The INA defines "managerial capacity" as

> an assignment within an organization in which the employee primarily–

(i) manages the organization, or a department, subdivision, function, or component of the organization;

(ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

(iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

(iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

8 U.S.C. § 1101(a)(44)(A).[13]

---

[13] The Code of Federal Regulations defines "managerial capacity" as:

an assignment within an organization in which the employee primarily:

(A) Manages the organization, or a department, subdivision, function, or component of the organization;

(B) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

(C) If another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

(D) Exercises direction over the day-to-day operations of the activity or function for which the employee has authority.

The INA defines "executive capacity" as:

> an assignment within an organization in which the employee primarily–
>
> (i) directs the management of the organization or a major component or function of the organization;
>
> (ii) establishes the goals and policies of the organization, component, or function;
>
> (iii) exercises wide latitude in discretionary decision-making; and
>
> (iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101(a)(44)(B).[14]

In the Complaint, Tsiva alleges what appears to be a single claim in which it asserts that the agency erred in deciding that Thaimanisamy did not qualify for an immigrant visa as a multinational executive or manager.  See Complaint at 4-18.[15]  Tsiva requests that the

---

8 C.F.R. § 204.5(j)(2).

[14]  The Code of Federal Regulations further defines "executive capacity" as:

> an assignment within an organization in which the employee primarily:
>
> (A) Directs the management of the organization or a major component or function of the organization;
>
> (B) Establishes the goals and policies of the organization, component, or function;
>
> (C) Exercises wide latitude in discretionary decisionmaking; and
>
> (D) Receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 C.F.R. § 204.5(j)(2).

[15]  As Defendants note, "Plaintiffs' complaint, while not clear, appears to seek review under the . . . [APA] . . . of each of the four AAO decisions."  Defendants' Motion at 2.

Court "[d]eclare as agency action unlawfully withheld and unreasonably delayed, pursuant to INA 203(b)(1)(C) and 8 C.F.R. 204.5(j), the violation of Defendants of INA 203(b)(1)(C) and 8 C.F.R. 204.5(j) in failing to make [the] visa available to Mr. Thaimanisamy[,]" and "[d]eclare as agency action that is arbitrary and capricious, an abuse of discretion, and not in accordance with the law, pursuant to INA 203(b)(1)(C) and 8 C.F.R. 204.5(j) in denying the I-140 Petition for Alien Worker and three I-290B Appeals/Motions to Reopen[.]" Complaint at 19.[16] As such, in Tsiva's Motion, Tsiva seeks entry of summary judgment under Rule 56 on the grounds that the USCIS "has been arbitrary and capricious in its unlawful denial of the immigrant visa petition[.]" Tsiva's Motion at 3. Specifically, Tsiva asserts that

---

[16] In the Complaint, Tsiva also requests that the "Court makes its own determination" on the Form I-140 petition and that the Court "adjudicate the Form I-140 Petition for Alien Worker that [Plaintiffs] filed with Defendants." Complaint at 2, 18. However, a district court reviewing an agency action under the APA is "limited to examining the administrative record to determine 'whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Niagara Handpiece, Ltd. v. U.S. Citizenship & Immigration Servs., No. 05-CV-667S, 2006 WL 2792292, at *5 (W.D.N.Y. Sept. 27, 2006) (alternation in original). Thus, the Court may not make its own determination or adjudication of Tsiva's petition. Indeed, "a reviewing court may not substitute its own judgment for that of the agency, and must affirm if a rational basis exists for the agency's determination, even if the court might otherwise disagree with it." Id.

Alternatively, Tsiva requests that the Court "[d]eclare as unlawful the violation of Defendants of INA 203(b)(1)(C) and 8 C.F.R. § 204.5(j) in failing to carry out Congress's express purpose in making immigrant visas available to those multinational business executives and managers fulfilling the requirements of 8 C.F.R. § 204.5(j) when the language of INA 203(b)(1)(C) mandates that the Service SHALL make a visa available to them." Complaint at 19. As Defendants indicate in their motion, see Defendants' Motion at 19-20, although qualified beneficiaries seeking employment-based visas under 8 U.S.C. § 1153(b)(1)(A)-(C) "are among those workers given 'first priority' for visas in the employment context," Khamisani, 2011 WL 1232906, at *3, petitioners must still demonstrate eligibility under the INA and its attendant regulations before the USCIS may grant these visas.

Further, Tsiva requests that the Court "declare unlawful" the AAO's rejection of Tsiva's January 15, 2009 Form I-290B motion to reopen and reconsider due to Tsiva's attorney's use of a signature stamp rather than an original handwritten signature. Complaint at 19. According to Tsiva, "nothing in the regulations or the instructions mandate [the use of an original handwritten signature]" and "instructions for other forms either clearly permit it . . . or prohibit it[.]" Id. Because the Court concludes below that the agency's denial of the visa due to Tsiva's failure to meet the statutory requirements was not arbitrary and capricious or an abuse of discretion, the Court need not address whether the AAO's rejection of Tsiva's January 15, 2009 Form I-290B motion to reopen and reconsider for the lack of an original handwritten signature was unlawful.

a reasonable person would conclude based on the initial evidence and the RFE that it is more likely than not true that there was a qualifying relationship between the two entities, Khesmir and Tsiva and that the Beneficiary acted as the Executive and/or Manager while running Khesmir and the Agilent corporate campus cafeteria and again in his efforts here in Jacksonville, Florida in purchasing, reorganizing and successfully running Big Pete's [Pizzeria].

Id. at 14.

In Defendants' Motion, Defendants assert that the "Court should affirm the December 19, 2008 denial of Tsiva's appeal because the evidence originally submitted by Tsiva in support of its petition was deficient in three respects[.]" Defendants' Motion at 5. Specifically, Defendants argue that the record evidence failed to establish that Tsiva had a qualifying relationship with Khesmir, that Thaimanisamy's position with Khesmir was executive or managerial, and that Thaimanisamy's position with Tsiva was executive or managerial. Id. at 5, 9-16. Additionally, Defendants assert that the Court should affirm the AAO's actions taken on Tsiva's consecutive motions to reopen and reconsider the AAO's original decision. Id. at 6, 17-19.[17]

To prevail on its contention that the agency abused its discretion in declining to grant Thaimanisamy an employment-based visa, Tsiva must demonstrate that the record compels three conclusions: 1) that Thaimanisamy acted as an executive or manager for Khesmir; 2) that Thaimanisamy acted as an executive or manager for Tsiva; and 3) that a qualifying relationship exists between Tsiva and Khesmir. Should the Court find that the agency did

---

[17] Defendants label Tsiva's January 13, 2009 motion to reopen and reconsider as Tsiva's "first motion to reopen and reconsider" and argue that this motion is moot. See Defendants' Motion at 17. The Court has already stated that it will not revisit the AAO's rejection of this motion for lack of an original handwritten signature. See supra note 16. However, because the AAO did not evaluate this motion on its merits, and because Tsiva resubmitted the exact same motion on January 30, 2009, with an original handwritten signature, the Court refers to Tsiva's January 30, 2009 motion to reopen and reconsider as the "first motion to reopen and reconsider."

not abuse its discretion in denying Tsiva's visa petition based on any of these three rationales, Defendants' Motion must be granted, and Tsiva's Motion must be denied.

### A.   Managerial or Executive Capacity

In order to qualify for an employment-based visa as a multinational manager or executive, the INA requires evidence that the beneficiary's job duties are <u>primarily</u> managerial or executive in nature.  See 8 U.S.C. § 1101(a)(44)(A)-(B); <u>see also</u> <u>Brazil Quality Stones, Inc. v. Chertoff</u>, 531 F.3d 1063, 1070 (9th Cir. 2008) (stating that the employee cannot qualify for a visa "simply because he performs managerial tasks" but that "such tasks must encompass his <u>primary</u> responsibilities").  "'By requiring that the duties be primarily managerial or executive, the express language of the regulations excludes workers whose job involves a mix of management and non-management responsibilities.'" <u>Khamisani</u>, 2011 WL 1232906, at *7 (quoting <u>Shine's Ranch Corp. v. Ridge</u>, No. CA 3:04-CV-2371-R, 2005 WL 1923595, at *3 (N.D. Tex. Aug. 10, 2005)).  Thus, a petitioner seeking such a visa must specify the nature of the proposed beneficiary's duties, as well as what proportion of the duties will be managerial or executive, and what proportion will be non-managerial or executive; general descriptions of business-related tasks will fall short of showing that the beneficiary's duties are primarily managerial or executive.  <u>See</u> <u>Republic of Transkei v. INS</u>, 923 F.2d 175, 177 (D.C. Cir. 1991) (INS' Administrative Appeals Unit's denial of petition for a visa was not arbitrary and capricious where the petitioner "failed to document what proportion of [the beneficiary's] duties would be managerial/executive functions and what proportion would be non-managerial/non-executive"); <u>Khamisani</u>, 2011 WL 1232906, at *7 ("Absent specific information, general descriptions of business-related tasks are insufficient to comply with the implementing regulations and do not demonstrate

that a beneficiary's proposed duties are primarily managerial or executive, as opposed to non-managerial."); Fedin Bros Co. Ltd. v. Sava, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989) ("Specifics are clearly an important indication of whether an applicant's duties are primarily executive or managerial in nature, otherwise meeting the definitions would simply be a matter of reiterating the regulations.").

In its December 26, 2007 decision denying Tsiva's visa petition, the USCIS determined that Tsiva failed to establish that Thaimanisamy "has been, or will be, employed in a managerial or executive capacity." CAR at 237. With regard to Thaimanisamy's position at Khesmir, the USCIS determined "it is clear that there were insufficient employees to free the beneficiary from performing day-to-day tasks such as purchasing, marketing, and accounting" such that "the evidence of record indicates that the primary parts of the beneficiary's duties in the instant case were devoted to the daily productive tasks of the company." CAR at 236. With regard to Thaimanisamy's position with Tsiva, the USCIS determined that his "job duties are vague and fail to identify the actual tasks performed" and "also fail to establish that the identified duties were primarily of an executive or managerial nature." Id. The USCIS further stated that Tsiva failed to specify who was responsible for purchasing supplies, working with advertising agencies, and handling daily financial transactions, among other tasks. Id. at 237. Because Tsiva failed to indicate who performed these tasks, the USCIS determined that "it is apparent that the beneficiary must perform these, and many other, daily tasks" such that the "primary parts" of Thaimanisamy's duties must be devoted to the daily productive tasks of the company. Id. On appeal, the AAO also determined that Tsiva failed to provide enough information with regard to the specific day-to-day tasks which Thaimanisamy performed abroad and would perform within the U.S. entity.

Id. at 203.  Instead, Tsiva attempted to establish Thaimanisamy's qualifying capacity "by implication" by discussing the non-qualifying job duties of others and subordinates.  Id.

Upon review, the Court determines that the agency was not arbitrary or capricious in its determination that the record evidence failed to establish that Thaimanisamy's job duties were primarily managerial or executive.  Tsiva's descriptions regarding Thaimanisamy's duties at both Khesmir and Tsiva are vague and lacking specific information regarding Thaimanisamy's actual job duties and the amount of time spent on these duties.  See Kong Hong USA Inc. v. Chertoff, No. C-06-00804 EDL, 2006 WL 3068876, at *6 (N.D. Cal. Oct. 27, 2006) (petitioner failed to demonstrate that visa beneficiary was "'primarily' engaged in her arguably managerial and executive duties" where the AAO found the evidence "to be lacking in detail as to what percent of time was spent on managerial or executive duties versus other non-qualifying duties").[18]  For instance, in its response to the USCIS's RFE, Tsiva states that as President of Tsiva, Thaimanisamy "directs, manages, and trains the first-line managers/supervisors," CAR at 249, but does not explain or specify what tasks Thaimanisamy undertakes to accomplish these duties.

Further, the agency's reference to both employers' small size was not arbitrary and capricious.  Significantly, the INA directly considers small organizations, providing that

_____

[18] For these same reasons, the Court declines to credit the argument raised in Tsiva's Response to Defendants' Motion that it had submitted sufficiently detailed descriptions of Thaimanisamy's job duties because these descriptions mirror the descriptions for "Chief Executive," "General and Operations Managers," and "Food Services Managers," which are found online at the Department of Labor's "O-Net OnLine" website.  See Tsiva's Response at 8-9.  Although Tsiva contends that these terms' descriptions contain "little precise detail as to time spent on any given task or when during the course of a week they should be accomplished[,]" see id. at 8, given the INA's statutory and regulatory requirements, the Court cannot determine that the agency was arbitrary or capricious in requiring a more specific description of Thaimanisamy's job duties.  Additionally, as discussed above regarding the standard of review under the APA, "[t]he focal point for judicial review of an administrative agency's action should be the administrative record."  Preserve Endangered Areas, 87 F.3d at 1246.  Because Tsiva did not present this argument to the USCIS or AAO, it cannot be raised here.

18

[i]f staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the Attorney General shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function.  An individual shall not be considered to be acting in a managerial or executive capacity . . . merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed.

8 U.S.C. § 1101(a)(44)(C); see also Sunshine Co. Food Distrib., Inc., 362 F. App'x at 3-4 (holding that the district court did not err in granting summary judgment in favor of the USCIS and rejecting the claim that the USCIS used the petitioner's small size as the sole basis for its denial because the "USCIS found that the majority of [the beneficiary's] time could not be spent acting in an executive or managerial capacity because [the beneficiary] had to fulfill" non-managerial and non-executive tasks); Brazil Quality Stones, Inc., 531 F.3d at 1070 (crediting the AAO's determination that the employer "ha[d] not yet reached the level of organizational sophistication in which [the beneficiary] could devote his primary attention to managerial duties as opposed to operational ones, even though he held a position at the head of [the employer's] corporate structure"); Fedin Bros., 724 F. Supp. at 1109 (noting that "[t]he INS merely used size as one factor among others in order to probe into the validity or the evidence presented by plaintiffs as to whether [the beneficiary's] job could be legitimately considered primarily executive or managerial in nature").  Of course, "small size, standing alone" cannot justify a finding that a proposed beneficiary is not operating in a managerial or executive capacity.  See Family, Inc. v. U.S. Citizenship & Immigration Servs., 469 F.3d 1313, 1315-16 (9th Cir. 2006).  "Rather, the executive's [or manager's] duties must be the critical factor." Khamisani, 2011 WL 1232906, at *5 (internal quotation marks and citation omitted).

In <u>Q Data Consulting, Inc. v. INS</u>, 293 F. Supp. 2d 25 (D.D.C. 2003), the district court determined that the INS "reasonably concluded" that the beneficiary's former and proposed duties were not primarily managerial for purposes of the petitioner's Form I-140 petition based, in part, on "absence of evidence that a sufficient 'subordinate staff' will 'relieve her from performing managerial nonqualifying duties.'" <u>Q Data Consulting, Inc.</u>, 293 F. Supp. 2d at 29.   In that case, the district court noted that although the beneficiary "would be supervising five to fourteen professional software consultants, . . . the INS could again reasonably infer that many of the office's responsibilities would gravitate towards [the beneficiary]." <u>Id.</u>  Similarly, in the instant case, the agency did not rest its decision solely on the fact that Khesmir and Tsiva are small companies with few staff.  <u>See</u> CAR at 236-37. Rather, the USCIS considered the job descriptions and organizational charts provided by Tsiva in determining that a majority of Thaimanisamy's time could not be spent acting in an executive or managerial capacity for either company.  With regard to Khesmir, the USCIS determined that it was "clear that there were insufficient employees to free the beneficiary from performing day-to-day tasks such as purchasing, marketing, and accounting." <u>Id.</u> at 236.  With regard to Tsiva, the USCIS noted that the petitioner's U.S. business is "engaged in its expansion following its rudimentary operation as a new business" and that "the number of employees is small" with a high turnover rate. <u>Id.</u> at 237.  In light of these realities, the USCIS reasonably concluded that

> [w]ithin such a small company, one may reasonably expect that [sic] a worker, even though he/she has responsibility for the firm's oversight, to devote the major [sic] or primary part of his/her assignment to the firm's daily productive tasks and first-line supervision of employees, as well as performing the duties of employees who are absent or have left the petitioner's employment.

20

Id. In that same vein, the AAO reasonably determined that certain duties specified by Tsiva, such as determining the business's employment structure and reviewing financial reports, were job duties that would only be performed during Khesmir's and Tsiva's initial stage of development, and at any rate, not daily. Id. at 204.

Tsiva further argues that the USCIS was arbitrary and capricious in relying, in part, on the fact that Tsiva's 2007 work schedule shows ten employees, while Tsiva's 2005 Form W-2 shows that there were only four employees. Tsiva's Motion at 7. Tsiva asserts that because these documents were from different years, they reasonably would not match. Id. Tsiva raises a similar argument with regard to the USCIS citing the discrepancies in the record regarding Big Pete's Pizzeria's hours of operation. Id. However, in addition to these discrepancies, the AAO pointed out an additional inconsistency in the record with regard to Tsiva's staffing at the time of filing: The AAO noted that Tsiva's August 2007 work schedule lists a total of ten workers, not including Thaimanisamy, whereas the Form I-140 indicates that Tsiva had only hired eight employees by the time the petition was filed in October 2006. CAR at 203. As such, the AAO concluded that "in light of the uncertainty with regard to the petitioner's staffing at the time of filing, the AAO cannot assume that the petitioner was able to relieve the beneficiary from having to primarily engage in the performance of the restaurant's daily operational tasks as of [the date of filing the petition]." Id. Because the regulations require that the petitioner establish visa eligibility as of the date of filing, see 8 C.F.R. § 103.2(b)(1), (12), the Court cannot determine that the agency was arbitrary and capricious in relying, in part, on these unresolved discrepancies in denying the petition. See Spencer Enter., Inc. v. U.S., 345 F.3d 683, 694 (9th Cir. 2003) (stating that "[a] few errors or minor discrepancies are not reason to question an alien's credibility" but that "[n]umerous

21

errors and discrepancies, however - especially where INS is evaluating the credibility of a business plan - raise serious concerns about viability of the enterprise"); see also Kong Hong USA Inc., 2006 WL 3068876, at *6 ("[W]hile minor discrepancies in themselves are not reason to question an alien's credibility . . ., Plaintiff cites no authority that the AAO must ignore such discrepancies.").

Tsiva also contends that the AAO was arbitrary and capricious in determining that Tsiva failed to establish that at the time of filing it had employed an outside accountant to relieve Thaimanisamy from performing non-qualifying operational tasks associated with accounting. Tsiva's Motion at 9. According to Tsiva, Tsiva's accountant signed Tsiva's 2005 tax return which was submitted with the original Form I-140 petition, and this evidence was substantiated by the 2007 letter from the accountant. Id. However, neither of these documents suggest that Tsiva employed an accountant in 2006, the year in which Tsiva filed the petition. Additionally, in support of its first motion to reopen and reconsider, Tsiva included a letter from "Padgett Business Service" stating that the company's accountant, Dale Lewis, prepared taxes and performed accounting services for Tsiva from November 2004 through December 2005. See id. at 194. It appears that the AAO did not reference this letter in either of its decisions denying Tsiva's motions to reopen and reconsider. See CAR at 30-33, 1-4. However, because Tsiva filed the Form I-140 petition in October 2006, this letter also fails to establish that an accountant relieved Thaimanisamy of these duties at the time of filing.

In consideration of the foregoing, the Court determines that Tsiva has not shown that the agency's denial of the visa petition was arbitrary, capricious, or an abuse of discretion because the agency reasonably concluded that Tsiva failed to establish that Thaimanisamy

22

has been and will be employed in a primarily managerial or executive capacity.  Because the record does not disclose a material fact issue with regard to this basis for denial of the visa petition, Defendants are entitled to summary judgment.  Despite this conclusion, in an effort to provide a complete record for appellate review, the Court will address the AAO's alternative basis for denial of the visa petition.

### B.    Qualifying Relationship between Khesmir and Tsiva

A U.S. employer who files a petition on behalf of an alien it seeks to employ as a multinational executive or manager must demonstrate that "[t]he prospective employer in the United States is the same employer or a subsidiary or affiliate of the firm or corporation or other legal entity by which the alien was employed overseas[.]"  8 C.F.R. § 204.5(j)(3)(i)(C). In the Complaint, Tsiva asserts that it is a subsidiary of Khesmir in that Khesmir owns 51% of Tsiva.  See Complaint ¶ 38.  The regulations define subsidiary to mean

> a firm, corporation, or other legal entity of which a parent owns, directly or indirectly, more than half of the entity and controls the entity; or owns, directly or indirectly, half of the entity and controls the entity; or owns, directly or indirectly, 50 percent of a 50–50 joint venture and has equal control and veto power over the entity; or owns, directly or indirectly, less than half of the entity, but in fact controls the entity.

8 C.F.R. § 204.5(j)(2). Ownership and control establish a qualifying relationship between the beneficiary's prospective employer in the United States and the entity by which the alien was employed overseas.  See Matter of Church Scientology Int'l, 19 I. & N. Dec. 593, 595 (1988). "Ownership refers to the direct or indirect legal right of possession of the assets of an entity with full power and authority to control."  Id.  "Control means the direct or indirect legal right and authority to direct the establishment, management, and operations of an entity."  Id.

23

Although in the USCIS's decision dated December 26, 2007, the USCIS determined that the evidence Tsiva submitted in response to the RFE established a qualifying relationship between Tsiva and Khesmir, see CAR at 236, on appeal, the AAO determined that Tsiva had not established the requisite qualifying relationship due to Tsiva's failure to prove Khesmir's ownership and control, id. at 204.  In particular, the AAO observed that the initial documentation dating from 2004 indicated that Tsiva was authorized to issue up to 50,000 shares of stock, and that Tsiva issued 25,500 shares, or 51% of its stock, to Khesmir. Id. at 204.  However, the AAO further observed that Tsiva's 2005 tax return did not show that it received any monetary compensation in exchange for the issuance of the stock, and that despite the USCIS's request for such documentation, Tsiva failed to provide evidence of Khesmir's payment for the issued stock.  Id. at 204-205.  Additionally, the AAO noted an inconsistency between stock certificate number five (5), which shows that on August 15, 2004, Tsiva issued 510 out of an authorized 1,000 shares, see id. at 253, and Tsiva's Articles of Incorporation, which shows that 50,000 shares were authorized for issue.  Id. at 205.  The AAO determined these were additional reasons to deny the petition.

In the Complaint, Tsiva asserts that because Khesmir has always held 51% ownership of Tsiva, Inc., and has always had direction and control over Tsiva's activities, Tsiva qualifies as a "subsidiary" under 8 C.F.R. 204.5(j).  Complaint ¶¶ 13, 38.  In support of this assertion, Tsiva maintains that Thaimanisamy, as 51% owner of Khesmir, directed Khesmir to transfer funds to "set up Tsiva" and for Tsiva to purchase Big Pete's Pizzeria. Id. ¶¶ 15, 16.  Accordingly, Tsiva maintains that the AAO's stated rationale for why Tsiva failed to demonstrate a qualifying relationship between Tsiva and Khesmir "simply does not make sense."  Tsiva's Motion at 10.  Rather, Tsiva asserts that its tax returns would not show

a receipt of funds to compensate it for issuing shares of stock because "Khesmir sent money to Mr. Thaimanisamy . . . to purchase Big Pete's and for which Khesmir own[s] 51% of Tsiva's stocks." Id.

However, the AAO's rationale was not limited to Tsiva's failure to demonstrate that Khesmir compensated Tsiva for the issued stock. Rather, in dismissing Tsiva's first motion to reopen and reconsider, see CAR at 31, the AAO also took note of the purchase agreement for Big Pete's Pizzeria, see id. at 115-119. In the first motion to reopen and reconsider, Tsiva's counsel argued that the purchase agreement demonstrated that Khesmir paid funds to Thaimanisamy to purchase Big Pete's Pizzeria, in exchange for which Khesmir owns 51% of Tsiva's stock. Id. at 38. However, the AAO correctly noted that the purchase agreement shows Thaimanisamy, rather than Khesmir, as the buyer of Big Pete's Pizzeria. Id. at 31. Moreover, in denying the first motion to reopen and reconsider, the AAO also stated that although Tsiva's counsel argued that Khesmir gave Thaimanisamy money specifically to make the purchase at Khesmir's request, "this claim is not documented with independent objective evidence." Id. at 31. To support the first motion to reopen and reconsider, and as evidence of Khesmir's purchase of Big Pete's Pizzeria, Tsiva submitted copies of wire transfers showing amounts transferred to "Sivanadipatham s/o Thaimanaswamy" on five separate dates in 2004. CAR 81-85. Based on this evidence, Tsiva argues that the AAO "erred" in finding "that nothing was submitting [sic] to substantiate the fact that Khesmir sent Tsiva money to purchase the restaurant when copies of money wires from Malaysia were submitted to show the transference of funds[.]" Tsiva's Motion at 12. However, none of the wire transfers indicate that Khesmir was the originator of the funds. Rather, the transfers state that the "originator" is "Kalimuthu A/L Thaimanaswamy."

Additionally, in support of its first motion to reopen and reconsider, Tsiva submitted a letter from Thaimanisamy stating that "Khesmir, at [his] direction sent $33,007.13 as an initial investment in 5 installments[.]" CAR at 54. Similarly, in its second motion to reopen and reconsider, Tsiva submitted an affidavit from Thaimanisamy and a letter from Khesmir, both of which explain that at Thaimanisamy's direction, Khesmir sent funds to the United States to purchase Big Pete's Pizzeria. Id. at 20, 22-23. In dismissing the first motion to reopen and reconsider, the AAO reasonably concluded that Tsiva's claim that Khesmir gave Thaimanisamy money specifically to purchase Big Pete's Pizzeria at Khesmir's request "is not documented with independent objective evidence." Id. at 31. Further, the AAO's dismissal of Tsiva's second motion to reopen similarly was not arbitrary and capricious because Tsiva did not submit evidence demonstrating any "new" facts.[19] Id. at 3. Finally, the AAO was not arbitrary and capricious based on its determination that Tsiva's second motion to reconsider was due to be dismissed because Tsiva had not submitted sufficient evidence of Tsiva's claimed qualifying relationship.[20] Id.

Accordingly, the record reflects that the AAO considered each piece of evidence submitted by Tsiva but ultimately determined that in light of the manifest inconsistencies and lack of independent, objective evidence, Tsiva failed to establish the requisite ownership and control of Tsiva by Khesmir. Tsiva has failed to demonstrate that the agency abused its discretion or that the decision to deny the visa petition was arbitrarily or capriciously made.

---

[19] "A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence." 8 C.F.R. § 103.5(a)(2).

[20] "A motion to reconsider a decision on an application or petition must, when filed, also establish that the decision was incorrect based on the evidence of record at the time of the initial decision." 8 C.F.R. § 103.5(a)(3).

Because the record does not disclose a material fact issue on either grounds for denial of the visa petition, Defendants are entitled to summary judgment.  In light of the foregoing, it is hereby

**ORDERED**:

1.      Plaintiffs' Motion for Summary Judgment and Memorandum in Support of Motion (Doc. 9) is **DENIED**.

2.      Defendants' Cross Motion for Summary Judgment (Doc. 10) is **GRANTED**.

3.      The Clerk of Court is directed to enter **JUDGMENT** in favor of Defendants Attorney General, Department of Justice, et. al., and against Plaintiffs Tsiva, Inc., et. al.

4.      The Clerk of Court is further directed to terminate any pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 24th day of November, 2014.


**MARCIA MORALES HOWARD**
United States District Judge


lc18

Copies to:

Counsel of Record